711 So.2d 1167 (1998)
Anthony J. FERAYORNI, as Personal Representative of the Estate of Paulette Jo Ferayorni, Appellant,
v.
HYUNDAI MOTOR COMPANY and Hyundai Motor America Corporation, Appellees.
No. 96-1745.
District Court of Appeal of Florida, Fourth District.
April 8, 1998.
Rehearing, Rehearing, and Clarification Denied June 18, 1998.
*1168 Thomas D. Lardin of Thomas D. Lardin, P.A., Fort Lauderdale, for appellant.
Francis M. McDonald, Jr. and Michelle M. Perez-Sotolongo of Cabaniss, McDonald, Smith & Wiggins, P.A., Orlando, for appellees.
Rehearing, Rehearing En Banc, and Clarification Denied June 18, 1998.
STEVENSON, Judge.
Appellant, Anthony Ferayorni, as personal representative of the estate of Paulette Ferayorni, appeals a jury verdict of no liability in *1169 favor of the defendants, Hyundai Motor Company and Hyundai Motor America Corporation (collectively referred to herein as "Hyundai"). We affirm the verdicts reached by the jury, but remand for a new trial on the estate's claim of strict liability failure to warn because the trial court failed to instruct the jury on this claim. In so doing, we clarify that under Florida law, negligent failure to warn and strict liability failure to warn represent two distinct theories of recovery.
The estate of Paulette Ferayorni initiated this wrongful death action after the seventeen-year-old was killed in a car accident on January 26, 1991. The accident occurred when Ms. Ferayorni's vehicle, a 1990 Hyundai Excel, was struck by another vehicle. It is undisputed that the decedent was not properly utilizing her seatbelt at the time of the accident. The Excel's seat belt system consisted of a "manual" lap belt and a "passive" shoulder belt;[1] however, the decedent was not wearing the lap belt, and she was wearing the shoulder harness under her arm, rather than over her shoulder. It is also undisputed that the cause of death was internal injuries caused by the pressure from the under-arm use of the seatbelt upon impact.
The estate's theory of the case was that Hyundai was aware that smaller drivers experience "neck-cutting" from the shoulder harness and respond by wearing the shoulder harness under their arms. The Fifth Amended Complaint raises various claims against Hyundai, including that the seatbelt mechanism was defectively designed and that Hyundai failed to warn of the risk of improperly utilizing the seatbelt. After a week-long trial, the jury returned a verdict of no liability, which the estate appeals on several grounds. We agree with the estate's argument that, while the trial court correctly instructed the jury on the law of negligence with respect to the estate's failure to warn claim, the trial court erred in refusing to instruct the jury on strict liability failure to warn.

I. Trial by consent
While the failure-to-warn claim pled in the estate's complaint alleged only Hyundai's failure to warn of the risk of wearing the shoulder harness without the lap belt, a somewhat different failure-to-warn claim emerged at trialand persists on this appealconcerning Hyundai's failure to warn of the risk of wearing the shoulder strap under one's arm. Although this particular failure-to-warn claim was not formally pled, our review of the trial transcript convinces us that it was tried with Hyundai's implied consent. See Fla. R. Civ. P. 1.190(b); Ford Motor Co. v. Hill, 381 So.2d 249, 250 (Fla. 4th DCA 1979)(finding that the unpled issue of strict liability was tried by the implied consent of all parties although the complaint alleged only negligence and breach of warranty), aff'd, 404 So.2d 1049 (Fla.1981). Without objection, the estate's expert witness, Dr. Robert Cunitz, testified that Hyundai should have better warned of the danger of wearing the shoulder strap under one's arm, and the estate argued in closing, without objection, that the Excel should have been equipped with a warning on the shoulder strap cautioning, "Danger... don't place belt under your arm...."

II. "Inherently dangerous" products
We initially disagree with Hyundai's contention that, because automobiles are not "inherently dangerous," the estate was not entitled to a failure-to-warn instruction under any theory. It is true that in Tampa Drug Co. v. Wait, 103 So.2d 603, 607 (Fla.1958), the supreme court ruled that an automobile was not "inherently dangerous" and, therefore, did not give rise to a duty to warn. However, Tampa Drug was decided before Florida adopted the doctrine of strict products liability. The supreme court has since explained that
[t]he phrase "inherently dangerous" is merely a descriptive, factual conclusion, largely of historical interest, which has lost most of its utility with the evolution of products liability law and the adoption of strict liability. Prosser, Law of Torts § 96 (4th ed.1971)....

*1170 With the adoption of strict liability in West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976), the phrase became largely pass except as a rhetorical device to persuade a jury that a product contained a defect or inherent characteristic which posed a danger to users or bystanders.
Radiation Tech., Inc. v. Ware Constr. Co., 445 So.2d 329, 331 (Fla.1983).
Relying on this language, this court, in Brown v. Glade & Grove Supply, Inc., 647 So.2d 1033, 1035 (Fla. 4th DCA 1994), held that a "road grader," a device much like a tractor, could be found defective by virtue of a design defect, a manufacturing defect, or a defective warning. Brown held that under Radiation Technology, "[w]hether or not a product is `inherently dangerous' is not determinative of the applicability of strict liability." 647 So.2d at 1035. Accordingly, we hold that the estate was not precluded from asserting its failure-to-warn claim merely because the Excel may not have been "inherently dangerous."

III. Strict liability failure to warn vs. negligent failure to warn
At the charge conference, the estate submitted its requested jury instructions on strict liability failure to warn.[2] At that time, the estate correctly pointed out that "[t]here are no standard instructions that deal with the concept of warning, zero, none." Hyundai challenged the proffered instructions, arguing that "[w]arning is nothing more than a negligence case, Judge." Thus, the parties hit upon an issue that American courts have resolved with divergent results, and which Florida courts have yet to resolvethat is, whether there is a substantive difference between strict liability failure to warn and negligent failure to warn. The trial court apparently agreed with Hyundai's position that the two theories are duplicative, as it instructed the jury on the estate's failure-to-warn claim only with reference to the law of negligence.[3]
Under the theory of strict products liability adopted in West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976), a product may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning. See Brown, 647 So.2d at 1035. In the failure-to-warn context, an "otherwise safe product" may be "defective" solely by virtue of an inadequate warning. See Giddens v. Denman Rubber Mfg. Co., 440 So.2d 1320, 1323 (Fla. 5th DCA 1983).
West`s progeny have emphasized that the strict liability theories are generally distinct from negligence. See, e.g., Moorman v. American Safety Equip., 594 So.2d 795 (Fla. 4th DCA 1992). Thus, a trial court's instruction to the jury on a claim of negligence normally will not obviate the need to instruct the jury on a parallel claim in strict liability. As this court has explained:
"[T]he doctrine of strict liability has evolved to complement the traditional conditional warranty and negligence theories." In West, the court adopted section 402A, Restatement (Second) of Torts, as the strict liability law of Florida. That section expressly says that it applies even though "the seller has exercised all possible care in the preparation and sale of his product...."
Therefore, it is unnecessary in a strict liability action to show that the manufacturer *1171 has been negligent in any way. In fact he can be found liable even though he was utterly non-negligent. It is thus obvious that strict liability has been placed into a user's arsenal of remedies as an addition to the traditional tort remedy of negligence, not in displacement of it....
Id. at 800 (quoting West, 336 So.2d at 84) (emphasis added); see also United States Mineral Prods. Co. v. Waters, 610 So.2d 20, 22 (Fla. 3d DCA 1992)("When a set of facts will support both a theory of common law negligence and strict liability, a plaintiff is entitled to proceed on either theory or both."), approved on other grounds sub nom. W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502 (Fla.1994).
However, a claim of strict liability arising specifically from a failure to warn may be an exception to the generally recognized distinction between negligence and strict liability. The issue, specifically, is whether a claim of strict liability failure to warn requires, like its counterpart in negligence, proof that the manufacturer knew or should have known of the product's dangerous propensities. As Judge Altenbernd explained in his concurring opinion in Baione v. Owens-Illinois, Inc., 599 So.2d 1377, 1379 (Fla. 2d DCA 1992):
The legal question is whether there is a substantive difference, or merely a rhetorical difference, between the two theories on duty to warn.
The Committee on Standard Jury Instructions in Civil Cases has not provided standard instructions on any theory of strict liability duty to warn "pending further developments of Florida law." Fla. Std. Jury Instr. (Civ.), IV at product liability, comment 2. In a number of jurisdictions, negligent duty to warn and strict liability duty to warn are virtually the same legal theory because they both depend upon a determination of reasonableness. 3 American Law of Products Liability 3d § 32:53 (T. Travers ed. 1987).... On the other hand, other courts have attempted to draw a distinction between the two theories. Beshada v. Johns-Manville Prods. Corp., 90 N.J. 191, 447 A.2d 539 (1982); Anderson v. Owens-Corning Fiberglass[Fiberglas] Corp., 53 Cal.3d 987, 281 Cal.Rptr. 528, 810 P.2d 549 (1991). See also Annotation, Strict Products LiabilityFailure to Warn, 33 A.L.R.4th 368 (1984); 9 American Law of Products Liability 3d § 113:25 (T. Travers ed.1988).
In Baione, the Second District reversed the dismissal of a strict-liability-failure-to-warn count in an asbestos case. Although the trial court allowed the negligent-failure-to-warn claim to proceed, the appellate court applied the general rule that a plaintiff is entitled to plead both negligence and strict liability when both apply. Id. at 1378. However, the Second District did not definitively resolve whether the two failure-to-warn theories are distinct. As Judge Altenbernd's concurring opinion continued:
The issue of strict liability duty to warn is sufficiently complex that I agree we should not decide it without giving the parties an opportunity to plead and prove that theory in the trial court. The trial court undoubtedly would prefer to handle the issue with more guidance as to the precise test for strict liability for failure to warn and the proper jury instructions for that theory, but we are more likely to make a correct decision if the issue has been fully explored in the trial court.
Id. at 1380.
In this case, we must resolve the question of whether the two theories are co-extensive since we have held that the failure to give a requested jury instruction is reversible error only when the rejected instruction was necessary for a proper resolution of the issues. See Auster v. Gertrude & Philip Strax Breast Cancer Detection Inst., Inc., 649 So.2d 883, 887 (Fla. 4th DCA 1995). If a proper instruction on strict liability failure to warn would have been merely redundant of the negligence instruction actually given, then it could not have been necessary for a proper resolution of this case.
Some jurisdictions that equate strict liability failure to warn with negligence rely on the language of the Restatement (Second) of Torts section 402A comment (j) which provides:

*1172 [T]he seller is required to give warning against [risks which the consumer would reasonably not expect to find in the product], if [the seller] has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the ... danger.
(emphasis added). This infusion of knowledge and reasonableness requirements has led some courts to hold that strict liability failure to warn has merged with negligence. See, e.g., Russell v. G.A.F. Corp., 422 A.2d 989, 991 (D.C.App.1980)(holding that under either theory, "the duty is the same: ordinary care"); accord Crislip v. TCH Liquidating Co., 52 Ohio St.3d 251, 556 N.E.2d 1177 (1990); see also W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 99, at 697 (5th ed.1984)(suggesting that a defective product claim based on inadequate warnings is "really nothing more than a ground of negligence liability").
We reject this view, and specifically hold that a prima facie case of strict liability failure to warn does not require a showing of negligence. In so holding, we note that the policy behind strict products liability is to facilitate a plaintiff's recovery where a manufacturer places on the market a potentially dangerous product and thereby "undertakes a certain and special responsibility toward the consuming public who may be injured by it." See West, 336 So.2d at 86.
Strict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence.
Id. at 90. At the same time, however, "[s]trict liability does not make the manufacturer or seller an insurer." Id. Thus, it may not be appropriate to entirely do away with a requirement that the manufacturer have some actual or constructive knowledge of the risk to which the failure to warn attaches.
We find that the appropriate balance was struck by the Supreme Court of California in Anderson v. Owens-Corning Fiberglas Corp., 53 Cal.3d 987, 281 Cal.Rptr. 528, 810 P.2d 549, 558 (1991). Anderson begins by refusing to absolutely eliminate a knowledge requirement from a claim of strict liability failure to warn, as this "would make a manufacturer the virtual insurer of its product's safe use, a result that is not consonant with established principles underlying strict liability." Id. at 550. However, the court held that the required showing of scienter for strict liability is not as burdensome as in the negligence context:
[F]ailure to warn in strict liability differs markedly from failure to warn in the negligence context. Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about. Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct. The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

Id. at 558-59 (emphasis added)(footnote omitted).
We agree with this formulation. While we recognize that a required showing of knowledge or constructive knowledge makes strict liability "to some extent a hybrid of traditional strict liability and negligence doctrine," Carlin v. Superior Court of Sutter County, 13 Cal.4th 1104, 1112, 56 Cal. Rptr.2d 162, 920 P.2d 1347 (1996), we find that this result best serves to promote the countervailing policies underlying strict liability articulated in West. As we construe Anderson, manufacturers are to be held to a higher standard than that imposed under negligence jurisprudence, but are not reduced to insurers; manufacturers are not required to warn of every risk which might be remotely suggested by any obscure tidbit of available knowledge, but only of those risks which are discoverable in light of the "generally recognized and prevailing best" knowledge available.
*1173 Under today's holding, we find that the instruction submitted by the estate, see supra note 2, does not accurately state the law of strict liability failure to warn because the proffered instruction would allow the jury to find Hyundai liable without any proof that Hyundai could have known of the product's dangerous propensities. Normally, the trial court's failure to give a requested instruction is reversible error only if the proffered instruction accurately states the law. See Auster, 649 So.2d at 887. However, the estate cannot be faulted for its inaccurate instruction since the relevant law was not settled at the time of trial. Furthermore, it seems that the trial court would have denied even a correct statement of the law, as its refusal to give the requested instruction was apparently based on the incorrect notion that strict liability failure to warn is "nothing more than a negligence case." For these reasons, the inaccuracy of the estate's proffered instruction should not preclude relief on this appeal.
Because the trial court failed to instruct the jury on the estate's claim of strict liability failure to warn, we remand for a new trial solely on that issue. The estate is not entitled to a retrial on its other claims as we find no reversible error with respect to them. See Baione, 599 So.2d at 1378.

IV. Certified photocopies of patents
On this appeal, the estate also challenges the trial court's refusal to admit into evidence certified copies of patents from the United States Patent Office. The patents depict "vertical height adjustment mechanisms," which are meant to alleviate seatbelt "neck-cutting." While we find no harmful, reversible error in the trial court's refusal to admit these documents, we are of the opinion that, on remand, the certified copies of the patents should be admitted if the trial court finds them to be relevant to the claim of strict liability failure to warn. Each photocopy is accompanied by a document bearing a seal of the United States and the United States Patent and Trademark Office, as well as a signature of a "Certifying Officer," acting under the authority of the Commissioner of Patents and Trademarks, attesting that "annexed is a true copy from the records of this office...." We find that this suffices to make the documents self-authenticating under section 90.902(1)(a)-(b), Florida Statutes (1995).
AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.
PARIENTE, BARBARA J., and MARRA, KENNETH A., Associate Judges, concur.
NOTES
[1] A "manual" seatbelt must be applied by the occupant, while a "passive" seatbelt is one which automatically moves into place around the occupant.
[2] The relevant portion of the estate's proffered instructions provided:

A restraint system that could not be safely used by a consumer without adequate warning of a potential danger would be unreasonably dangerous and defective if it left the manufacturer without an adequate warning. It is unnecessary to show that the manufacturer has been negligent if the product is defective as defined by this court.
[3] The trial court's instructions concerning the estate's failure-to-warn claim provided:

Plaintiff also alleges that Hyundai was negligent in failing to adequately warn users about the proper use of the seatbelt restraining system.
.....
The issue for your determination on the negligence claim by the plaintiff against Hyundai is whether Hyundai failed to adequately warn users about the proper use of the seatbelt restraint system, and if so, whether such negligence was a legal cause of the death of Paulette Jo Ferayorni.
Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful manufacturer would use in like circumstances....