Don REDMAN and Gwen
Redman, Plaintiffs,

v.

COBB INTERNATIONAL, INC.,
etc., et al., Defendants.

No. 97–700–CIV–ORL–19C.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 7, 1998.

Terence Robert Perkins, Monaco, Smith, Hood, Perkins, Loucks & Stout, Daytona Beach, FL, for Plaintiffs.

F. Bradley Hassell, Eubank, Hassell & Associates, Daytona Beach, FL, Howard Daigle, Jr., Michael D. Fisse, Seale Daigle & Ross, Covington, LA, for Defendants.

### ORDER

FAWSETT, District Judge.

This cause came before the Court on the following matters:

(1) Defendant Cobb International Inc.'s Motion for Summary Judgment (Doc. No. 24, filed April 30, 1998) and Plaintiffs' Response to Defendant's Motion for Summary Judgment (Doc. No. 32, filed May 27, 1998);

(2) The Report and Recommendation of the United States Magistrate Judge Recommending that Defendant Cobb International Inc.'s Motion for Summary Judgment be Granted (Doc. No. 54, filed September 2, 1998); Plaintiffs' Objection to Magistrate's Report and Recommendation (Doc. No. 56, filed September 15, 1998); and Cobb International Inc.'s Response (Doc. No. 61, filed October 6, 1998);

(3) Agreed Motion to Continue Trial and Supporting Memorandum of Law (Doc. No. 59, filed September 29, 1998).

Plaintiffs bring this suit for negligence and strict liability arising out of a helicopter crash involving Don Redman. (Doc. No. 40). Defendant Cobb International, Inc. ("Cobb") is named in Courts One, Two, and Four of the Amended Complaint.[1] *See id.* On September 2, 1998, the United States Magistrate Judge issued a Report and Recommendation ("Report"), recommending that Cobb's Motion for Summary Judgment be granted. (Doc. No. 54). On September 15, 1998, Plaintiffs timely objected to the Report on the issues of successor liability and the existence of a duty arising out of a continued business relationship between Mr. Redman and Cobb. (Doc. No. 56). Consequently, the Court will review the Report *de novo.* See Fed.R.Civ.P. 72.

The issues on which Plaintiffs base their objections were expressly addressed in the Report. (Doc. No. 54). In this regard, after considering the record before the Court and the applicable law, the Court finds that the Magistrate Judge's thorough, well-reasoned opinion correctly states the facts and law applicable in this case. As a result, the Court adopts, affirms, and approves the Report, including its conclusion that summary judgment should be granted in favor of Cobb.

Based on the foregoing, the Court rules as follows:

(1) The Report and Recommendation of the United States Magistrate Judge Recommending that Defendant Cobb International Inc.'s Motion for Summary Judgment be Granted (Doc. No. 54, filed September 2, 1998) is **ADOPTED, AFFIRMED, and APPROVED.**

(2) Defendant Cobb International Inc.'s Motion for Summary Judgment (Doc. No. 24, filed April 30, 1998) is **GRANTED.**

(3) The Clerk is directed to enter Judgment in favor of Defendant Cobb International, Inc. and against Plaintiffs Don Redman and Gwen Redman.

(4) Agreed Motion to Continue Trial and Supporting Memorandum of Law (Doc. No. 59, filed September 29, 1998) is **DENIED as MOOT.**

(5) Plaintiffs are Ordered to Show Cause within eleven (11) days from the date of this Order why their claim against John Netherwood should not be dismissed for failure to serve him in compliance with Federal Rule of Civil Procedure 4(m). Failure to comply with this Order may result in sanctions, including but not limited to dismissal of the claim without further notice.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

This cause came on for hearing on August 5, 1998 on the following motion:

**MOTION:** **DEFENDANT COBB INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 24]

**FILED:** April 30, 1998

**RECOMMENDATION: GRANTED.**

This cause is before this Court on the motion for summary judgment of defendant Cobb International, Inc. d/b/a Rotorway In-

---

**1.** Gwen Redman asserts a consortium claim derivative of Mr. Redman's claim in Count Four. Moreover, Plaintiffs name John Netherwood as a Defendant in Count Three of the Amended Complaint, but the record indicates that Mr. Netherwood has not been served, even though this case was filed in this Court on May 30, 1997. (Doc. Nos. 1, 40). Finally, at the hearing on summary judgment before the Magistrate Judge, Plaintiffs abandoned Count Two of the Amended Complaint, which alleged strict liability. (Doc. No. 54, at 2 n. 1).

ternational ("Cobb") at Docket No. 24, and pursuant to the Honorable Patricia C. Fawsett's order of referral at Docket No. 31. First, plaintiffs Don and Gwen Redman contend that Cobb is liable as a corporate successor for its predecessor's manufacture and sale of the defective helicopter power plant that injured Redman. Second, the Redmans contend that Florida negligence law[1] requires a seller of helicopter parts (Cobb) to disclose known defects in helicopter power plants to each of its regular parts customers (including Redman who did not purchase his power plant from Cobb) where the parts customer relies on Cobb for technical advice concerning safety upgrades and modifications. *See* Docket No. 33. Florida law imposes no such duty or liability, and the record of facts does not support the Redmans' contention. The district court should enter final judgment for defendant Cobb International, Inc. on its motion for summary judgment.

## I. THE LAW

### A. Standard of Review on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox,* 64 F.3d 590, 593–94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits

and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* 477 U.S. at 324, 106 S.Ct. 2548. If the nonmoving party's response to the summary judgment motion is nothing more than mere conclusory allegations, then the court must enter a summary judgment in the moving party's favor. *See Johnson v. Fleet Finance, Inc.,* 4 F.3d 946 (11th Cir.1993).

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox,* 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact,

---

**1.** At the hearing on summary judgment, the Redmans abandoned their claim of strict liability for failure to warn (Count II), as well as their nonwarning negligence claims. This leaves only

claims for negligent failure to warn against Cobb (Count I) and Netherwood (Count III), and for consortium (Count IV). *See* First Amended Complaint, Docket No. 40.

then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* 477 U.S. at 251–52, 106 S.Ct. 2505. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

### B. Successor Corporation Liability

 In Florida, the general rule is that the obligations and liabilities of a predecessor corporation are not imposed upon the successor company unless: (1) the successor expressly or impliedly assumes the obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor. *Bernard v. Kee Manufacturing Company, Inc.,* 409 So.2d 1047, 1049 (Fla.1982). In *Bernard,* the plaintiffs brought a product liability action against Kee Manufacturing Company, Inc. alleging negligence, breach of implied warranty, and strict liability. Bernard claimed that a defective lawn mower injured him after purchasing it from Kee's predecessor. *Id.* 409 So.2d at 1048. Kee had purchased the predecessor's assets, including its plant, inventory, goodwill and the use of its name. According to the terms of the acquisition, Kee did not acquire the predecessor's obligations or liabilities. *Id.* Kee kept all of the former employees, and operated under the

trade name "Kee Mowers ." Kee continued to manufacture lawnmowers, and even provided replacement parts for the lawnmower at issue.

The Florida Supreme Court declined to hold Kee strictly liable for the defect in the lawnmower. Kee was not liable for its predecessor's acts. The Supreme Court reasoned that a finding of successor liability would not be "consistent with at least one major premise of strict liability, which is to place responsibility for a defective product on the manufacturer who placed that product into commerce." 409 So.2d at 1050. Rather, the Supreme Court chose to follow Florida's traditional corporate law rule of no successor liability, due in part to the threat of economic annihilation that small business would face under such a rule of expanded liability for a predecessor's product. 409 So.2d at 1049.

 *Bernard* applies also to negligence cases. In *RHPC, Inc. v. Gardner,* 533 So.2d 312 (Fla. 2d DCA 1988), the court of appeals applied the holding in *Bernard* to the corporate successor who purchased a hospital. The Court found no liability where the successor had acquired only the assets of the predecessor hospital. *Id.* 533 So.2d at 315; *see also Caplan v. 1616 East Sunrise Motors, Inc.,* 522 So.2d 920, 921 (Fla. 3d DCA 1988) (purchaser of automobile dealership was not subject to successor liability). Accordingly, a defendant is not liable for the negligence[2] of a predecessor corporation unless the plaintiff can prove one of the exceptions set forth in *Bernard.*

### II. APPLICATION

Applying the general rule, the obligations and liabilities of Rotorway, the predecessor corporation, are not imposed upon Cobb, the successor company, unless: 1.) the Cobb expressly or impliedly assumes Rotorway's obligations; 2.) the sale of Rotorway's assets was a de facto merger; 3.) Cobb is a mere continuation of Rotorway; or 4.) the asset sale was a fraudulent effort to avoid

---

**2.** Florida recognizes a distinction between strict liability for failure to warn and negligent failure to warn. *See Ferayorni v. Hyundai Motor Company,* 711 So.2d 1167 (Fla. 4th DCA 1998). Negligent failure to warn requires proof that the

manufacturer knew or should have known of the product's dangerous propensities. *Id.* 711 So.2d at 1170. Strict liability, on the other hand, requires no such proof. *Id.*

Rotorway's liabilities. It helps to begin by describing the "manufacturing" history of Redman's aircraft, a "Rotorway Executive Aircraft" helicopter. Consumers purchase the "Rotorway Executive Aircraft" in parts from an aircraft kit supplier, and then assemble the kit. *See* Docket 25 at 2, n. 1.

Rotorway Aircraft, Inc. ("Rotorway") tested and manufactured the aircraft kit at issue, and then sold it to Paul Richmond on March 19, 1985.[3] *See* Docket No. 46. Richmond completed construction of the aircraft. *Id.* Richmond sold the aircraft to plaintiff Don Redman on February 20, 1993 in Dover, Arkansas. *Id.;* Docket No. 33. In 1990, Rotorway became insolvent and ceased doing business. *See* Docket No. 25, Exhibit B.

As a consequence, Rotorway defaulted on a loan with First Business Bank of Arizona ("the Bank"). *Id.* The Bank held a promissory note and security interests in Rotorway's assets. *Id.* On May 31, 1990, the Bank sold the note and security interests to Exec Helicopter Club, Ltd. *Id.* Exec Helicopter then foreclosed on Rotorway's note, and held a public auction of its assets. *Id.* At the public auction, Exec Helicopter was the highest bidder. *Id.* Exec Helicopter then sold the former assets of Rotorway to Cobb. *Id.*

Cobb did not incorporate until May 31, 1990, and did not participate in the aircraft industry until June 19, 1990. *See* Docket No. 25, Exh. B. None of Cobb's shareholders had any ownership interest in Rotorway. Rotorway's shareholders never held any shares in Cobb. *Id.* Although Cobb acquired Rotorway's assets from Exec Helicopter, there is no other relationship between Cobb and Rotorway. *Id.*

Redman did business with Cobb from February 20, 1993 until May 14, 1994. *See* Docket No. 33. Redman had at least fifteen telephone discussions with representatives of Cobb regarding upgrading his aircraft, its components and systems. *See* Docket No. 33. Redman asserts that, based on Cobb's advice, he purchased upgrades and options from Cobb. *See* Docket No. 46. Redman

claims that he had detailed conversations with Cobb regarding specific modifications required on his engine. *See id.*

On May 12, 1994, the helicopter's engine failed and the helicopter crashed while Redman was the pilot. *See* Docket No. 40. Redman now charges—without evidentiary support—that Cobb knew that his aircraft engine, head assembly, and power train were defective and dangerous in design, manufacture and construction. *See* Docket Nos. 32 and 40. Redman does not allege, however, that any of the upgrades or improvements that he had purchased from Cobb either caused or contributed to the failure of his engine and the crash. *See* Docket No. 46.

■ There is no dispute that Cobb did not manufacture, design, test, or sell the actual aircraft or power plant that Redman alleges to have been defective. The facts of this case are almost identical facts to the facts in *Bernard.* Like Kee, Cobb had purchased the predecessor's assets, including its inventory, goodwill, and the use of its trade name. Like Kee, Cobb provided replacement parts for the product at issue. For the reasons stated in *Bernard,* this Court applies Florida's traditional corporate law rule of no successor liability.

■ The Court rejects Redman's unproved contention that Cobb's purchase of Rotorway's assets falls within two of the four exceptions set forth in *Bernard.* The facts fall far short of demonstrating that Cobb is a mere continuation of Rotorway. They are different corporations, with different owners, operating at different times. The assets were sold through mesne transactions. Neither do the facts demonstrate that the asset sale was a fraudulent effort to avoid Rotorway's liabilities. Rather, Rotorway's main creditor, the Bank, managed the asset sale to assure payment of Rotorway's principal liability. The record contains no evidence of threatened litigation from kit purchasers at

---

3. The Federal Aviation Administration ("FAA") classifies amateur-built kit aircraft as "experimental," and exempts them from the complicated FAA certification requirements. To qualify for the experimental classification, the amateur buyer must construct the majority of the kit aircraft. This is known as the "51% rule" in the trade. Under this rule the FAA designates the amateur builder as the "manufacturer" of the aircraft rather than the kit seller. *See* Federal Aviation Regulation 21.191(g); 14 C.F.R. § 21.191(g).

the time, or of any intent to avoid any other liability. Therefore Cobb is not liable as a corporate successor for its predecessor's manufacture and sale of an allegedly defective helicopter power plant.

Significantly, the record does not support the allegations 1.) that Cobb knew what power plant Redman was using; 2.) that the power plant that Redman was using was in fact defective; 3.) that Cobb knew that Redman's power plant was defective; 4.) that Cobb was selling "essentially the same" power plant that Redman was using; or 5.) that Cobb knew that Redman relied on Cobb for technical advice concerning safety upgrades and modifications. Even according Redman all reasonable inferences, the assertions in his affidavit do not suffice. *See* Docket No. 33. Redman alleges that an unnamed Cobb employee told him that the head on Redman's aircraft was the "same design and construction as the current models, with the addition of a second spark plug per cylinder," and that the "head assembly need not be replaced or upgraded." Docket No 33 at ¶ 13. As proof of what Cobb knew, Redman submits only hearsay statements by unknown employees of undetermined rank. Redman submits no expert opinion that his head assembly was even defective, or that Cobb sold power plants or engines that were "essentially the same" as Redman's. Redman's own opinion of similarity is inadequate. Fed. R.Evid. 701 – 05. Even if the record did support Redman's factual allegations, Redman points to no Florida law that requires a seller of parts to disclose defects in a product that it did not sell.

## III. CONCLUSION

Cobb has discharged its burden of showing an absence of evidence supporting the Redmans' case. The undersigned recommends that Cobb's motion for summary judgment [Docket No. 24] be GRANTED, and that final judgment be entered in favor of defendant Cobb International, Inc.

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** this 2nd day of September, 1998.