Darryl JONES, et al., Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 98–630–CIV–ORL–18A.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 28, 1998.

D. Bruce Petway, Lucas, Alvis & Wash, Birmingham, AL, John Robert Overchuck, Overchuck, Newsome & Schwerer, L.L.P., Orlando, FL, for Plaintiffs.

William L. Kirk, Jr., Daniel J. Gerber, Rumberger, Kirk & Caldwell, P.A., Orlando, FL, for Defendants.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiffs bring this instant action against defendant General Motors Corporation ("GM") alleging negligent design and manufacture based upon the positioning of the fuel tank and exhaust bolt and bracket in the 1991 Pontiac Sunbird; strict liability; negligent failure to warn; and intentional suppression/failure to warn. The case is presently before the court on GM's motion to dismiss Count IV of plaintiffs' complaint for failure to state a claim or, in the alternative, to strike allegations in Count IV based on attorney-client privileged materials and motion to strike paragraphs 108–118 of Count IV and portions of Counts I, II, and III of the plaintiffs' complaint. Following a review of the case file and relevant law, the court finds that the defendant's motion should be granted in part and denied in part.

### I. Factual Background

On November 9, 1996, the plaintiffs' decedents, Kara Crosby, Lyndsey Jones, Esther Nosavahn, and Miguel Gonzalez, Jr., were driving in a 1991 Pontiac Sunbird, manufactured by GM, when they were involved in a single car collision. The Sunbird hit a tree and immediately after impact burst into flames. The plaintiffs' decedents survived the initial impact but died from the fuel fed fire that occurred after the collision.

The gas tank of the 1991 Sunbird was located forward of and partially below the rear axle. The exhaust system ran within a few inches of the gas tank and there was no shield between the U-joint or hanger for the exhaust system and the gas tank. Upon collision, the U-joint or hanger for the exhaust system punctured the gas tank causing gas to flow into the exhaust system and ignite. The flames came up through the floor pan of the car fatally burning the plaintiffs' decedents. Plaintiffs contend that had the tank been located completely above the axle and in the general area of the trunk, as it is with many other manufacturers, the post accident fuel fed fire would have been prevented. This present suit followed.

### II. Legal Discussion

#### A. Standard for Motions to Dismiss

In determining whether to dismiss a case, the court accepts the allegations in the complaint as true, and otherwise views the allegations in the light most favorable to the plaintiff. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir.1992) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir.1983)). However, the court is not permitted to read into the complaint facts that are not there. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Beck v. Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir. 1992). Consequently, the court is not allowed to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contrac-*

*tors of Cal., Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Therefore, the court may dismiss a cause of action for failure to state a claim upon which relief may be granted if the defendant establishes that the plaintiff can prove no set of facts that would entitle him to relief under the applicable substantive law. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990).

**B. The Merits of Defendant's Motion**

In Count IV of their complaint, plaintiffs allege that GM intentionally suppressed a "cost-benefit analysis" of fire-related deaths in GM vehicles. Plaintiffs argue that GM attempted to prevent that cost-benefit analysis from being made available as evidence in cases filed against GM. Furthermore, they contend that by concealing the existence of the cost-benefit analysis, the public, including the decedents, were ignorant of the dangers of post collision fuel fed fires. Defendant argues that Count IV should be dismissed because it does not state a claim under Florida law and because it bases liability on the failure to disclose attorney-client privileged materials. GM also motions to strike parts of Counts I, II, and III for failure to comport with Rule 8 of the Federal Rules of Civil Procedure. The court will address each of defendant's arguments in its respective order.

**1) *Failure to state a claim under Florida law***

■ In their response to defendant's motion to dismiss Count IV, plaintiffs state that Count IV is based in part upon GM's "course of conduct [which was] designed to prevent Mr. Ivey's cost-benefit analysis and the truth of its generation from being made available as evidence for victims of and survivors of victims . . . in this case and in other cases filed against GM." (Doc. 7, Pl. Resp. at 4). As GM argues, however, discovery violations in other lawsuits cannot form the basis for an independent cause of action. If GM violated discovery rules by failing to produce documents in previous cases, then GM should have have been sanctioned by the courts hearing those cases. Plaintiffs in this case

do not have a private right of relief for GM's alleged past discovery misconduct.

■ Florida courts also have not recognized "intentional suppression/failure to warn" as a separate and independent failure to warn claim in a products liability action. Instead, courts recognize liability for failure to warn based on negligence and strict liability. *See Ferayorni v. Hyundai Motor Company,* 711 So.2d 1167 (Fla. 4th DCA 1998). Plaintiffs' complaint already states a cause of action for negligent failure to warn and strict liability. They argue that "intentional suppression/failure to warn" is a cognizable claim under Florida law because "the 'unique risk' of the positioning of the fuel tank, coupled with the positioning of the exhaust bolt and bracket, can form the basis for finding a duty to warn." (Doc. 7, Pl. Resp. at 8). This argument, however, does not explain why the court should recognize "intentional suppression/failure to warn" as an additional and separate claim upon which liability can be based.

In *Rozier v. Ford Motor Company,* 573 F.2d 1332 (5th Cir.1978), the court found that a "trend cost estimate" prepared by Ford which compared the costs of two fuel tank designs for a 1971 full-sized car supported a finding that Ford had negligently failed to warn of dangers arising from a design defect. *See id.* at 1345. The "trend cost estimate" was evidence that Ford had knowledge of the defect and therefore a jury could have found they were liable for negligent failure to warn. *See id.* In a similar case, the court in *American Motors Corporation v. Ellis,* 403 So.2d 459 (Fla. 5th DCA 1981), held that evidence showing that the automobile manufacturer was aware of a defect in the fuel system but did not warn of the dangers or seek an alternative design was for the jury on the issue of punitive damages. *See id.* at 466. Neither court recognized a failure to warn claim based on intentional suppression of evidence that was separate from negligent failure to warn. In their response to defendant's motion, plaintiffs offer no support for finding that "intentional suppression/failure to warn" is a claim separate and independent from a negligent failure to warn claim and one upon which relief can be granted. Ac-

cordingly, their fourth cause of action must be dismissed.

] Plaintiffs also attempt to argue in their response that their "intentional suppression/failure to warn" claim is actually an inartfully pled fraudulent concealment claim. In order to assert a cause of action under Florida law based upon fraudulent concealment, plaintiffs must establish:

(1) a misrepresentation of material fact or suppression of the truth;

(2) [a] knowledge of the representor of the misrepresentation, or [b] representations made by the representor without knowledge as to either the truth or falsity, or [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof;

(3) an intention that the representor induce another to act on it; and

(4) resulting injury to the party acting in justifiable reliance on the representation.

*Pulte Home Corporation, Inc. v. Ply Gem Industries, Inc.,* 804 F.Supp. 1471, 1483 (M.D.Fla.1992) (citations omitted). Fraudulent concealment arises where the buyer does not have an equal opportunity to become aware of the material fact, or where the seller has a duty to speak but does not. *See id.*

Plaintiffs' "intentional suppression/failure to warn" claim is insufficient as a fraudulent concealment claim because plaintiffs fail to plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b). They do not allege the necessary elements for a fraudulent concealment claim under Florida law and therefore the claim must be dismissed.

### 2) Attorney–Client Privilege

 In addition to failing to state claim under Florida law, plaintiffs' fourth cause of action is deficient because it is impermissibly based on attorney-client privileged materials. Plaintiffs claim that GM is liable for failure to disclose communications made between Mr. Edward Ivey, the GM engineer who prepared the cost-benefit analysis, and GM's counsel. These communications, however, are protected by the attorney-client privilege and cannot give rise to a duty to warn. *See*

*Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (holding that attorney-client privilege extends to communications between corporate counsel and corporate employees); Fla. Stat. § 90.502 (1987).

] Plaintiffs argue that the crime-fraud exception to the attorney-client privilege applies to the communications between Mr. Ivey and GM counsel. The attorney-client privilege does not apply where "[t]he services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud." Fla. Stat. § 90.502(4)(a)(1987). To come within the crime-fraud exception, plaintiffs "must allege and produce prima facie evidence that [GM] affirmatively sought the advice of counsel to procure a fraud." *Florida Mining and Materials Corporation v. Continental Casualty Company,* 556 So.2d 518, 519 (Fla. 2nd DCA 1990). Plaintiffs argue that a paragraph in a document prepared by GM's counsel referring to a discussion with Mr. Ivey about the cost-benefit analysis provides prima facie evidence of a "violation that was ongoing or about to be committed." (Doc. 7, Pl. Resp. at 18). However, after a review of the document entitled "Interview with Edward C. Ivey, November 3, 1981" the court finds that the language cited by the plaintiff is insufficient to vitiate the attorney-client privilege. The document does not satisfy the plaintiffs' burden of showing probable cause that a fraud was perpetrated or planned and that the attorney-client communications were in furtherance of the fraud. Therefore, plaintiffs' fourth cause of action, "intentional suppression/failure to warn," must be dismissed because it is based on the failure to disclose communications between GM counsel and a GM employee which are protected by the attorney-client privilege.

### 3) Rule 8

 Defendant also requests that parts of Counts I, II, and III in plaintiffs' complaint be stricken for failure to comport with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 states that pleadings "shall be

simple, concise, and direct." GM argues that plaintiffs' complaint contains evidentiary material, specifically references to exhibits, which are not short and concise statements of facts. Courts have stricken evidentiary detail from pleadings where it is unnecessary or prejudicial. *See In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1168–69 (5th Cir.1979). Defendants do not argue that the material is unnecessary or prejudicial but instead they contend that "[i]t is a violation of Rule 8 ... for the Plaintiffs to attach and cite to these documents in their Complaint." (Doc. 6, Def. Mtn. at 19). Federal Rule of Civil Procedure 10, however, permits plaintiffs to attach documents to their complaint as exhibits. Furthermore, the purpose of Rule 8 is to provide adequate notice to the defendant of the basis for the plaintiff's claims. *See Krehling v. Baron,* 900 F.Supp. 1574, 1577 (M.D.Fla.1995). Plaintiffs' Counts I, II, and III provide fair notice to the defendant of what the claims are and on what grounds they are based and therefore defendant's motion to strike must fail.

### III. Conclusion

For the reasons set forth above, defendant's motion to dismiss Count IV for failure to state a claim (Doc. 6) is **GRANTED.** Accordingly, Count IV of plaintiffs' complaint is dismissed without prejudice. Furthermore, the court finds that Counts I, II, and III comply with Federal Rule of Civil Procedure 8 and therefore defendant's motion to strike (Doc. 6) is **DENIED.** The case shall proceed accordingly.