843 So.2d 336 (2003)
Peter GRIFFIN, Appellant,
v.
KIA MOTORS CORP. and Kia Motors America, Inc., Appellees.
No. 1D01-4668.
District Court of Appeal of Florida, First District.
April 23, 2003.
John Beranek of Ausley & McMullen, Tallahassee; Donald M. Hinkle of Hinkle & Foran, Tallahassee; and Robert A. Robbins of Robbins & Reynolds, P.A., Miami, for Appellant.
Bruce Culpepper, Joseph W. Hatchett and Robert J. Telfer III of Akerman, Senterfitt & Eidson, P.A., Tallahassee; and Larry M. Roth and Martin J. Jaffe of Roth, Powell & Pearson, P.A., Winter Park, for Appellees.
*337 ERVIN, J.
Peter Griffin appeals a judgment entered on behalf of appellees, Kia Motors Corp. and Kia Motors America, Inc. (Kia), in a strict liability action brought by him against Kia, after a jury found that the seatbelt design in appellant's vehicle manufactured by appellees was not defective. We reverse and remand for new trial, because the lower court erred under D'Amario v. Ford Motor Co., 806 So.2d 424 (Fla.2001), by admitting evidence of comparative fault, and by refusing to instruct the jury on appellant's theory of strict liability failure to warn.
We initially address appellant's contention that the trial judge assigned to try the case had no legal authority to so act because he did not reside within the jurisdiction of the court where he was assigned. Griffin asserts that the rule authorizing such assignment conflicts with the Florida Constitution. Florida Rule of Judicial Administration 2.050(b)(4), provides, in part:
The chief judge may assign any judge to temporary service for which the judge is qualified in any court in the same circuit. If it appears to the chief judge that the speedy, efficient, and proper administration of justice so requires, the chief judge shall request the chief justice of the supreme court to assign temporarily an additional judge or judges from outside the circuit to duty in the court requiring assistance[.]
Article V, section 2(b) of the Florida Constitution authorizes the chief justice of the supreme court to assign retired judges "to temporary duty in any court for which the judge is qualified," and Article V, section 8, which contains criteria regarding eligibility for judicial office, provides that a person is eligible only if he or she "resides in the territorial jurisdiction of the court." In that Judge Clinton Foster resided in the 14th Judicial Circuit, Griffin argues that he was unqualified to serve as a judge in this case, which was tried in the 2d Judicial Circuit. We are precluded from reaching this issue. The Florida Supreme Court has exclusive jurisdiction to review judicial assignments. See Wild v. Dozier, 672 So.2d 16 (Fla.1996), outlining the procedure for a litigant affected by a judicial assignment to contest such assignment.
Nevertheless, because the Florida Supreme Court in Wild addressed a question certified by a district court of appeal as one of great public importance regarding an assignment, and because several cases are currently pending before the Florida Supreme Court in which the issue now before us has been raised,[1] we certify the following question to the Florida Supreme Court to be one of great public importance:
IS A RETIRED CIRCUIT COURT JUDGE WHO RESIDES OUTSIDE THE TERRITORIAL JURISDICTION OF THE COURT IN WHICH HE OR SHE IS TEMPORARILY ASSIGNED TO SERVE DISQUALIFIED FROM SO ACTING BECAUSE OF THE PROVISIONS OF ARTICLE V, SECTION 8 OF THE FLORIDA CONSTITUTION?
The disposition of the remaining points on appeal requires a summary of the facts. In the early-morning hours of July 1, 1996, Griffin was riding in the front-passenger seat in his 1996 Kia Sephia automobile driven by his friend, Jahaira Lara, on an interstate highway near Tallahassee, Florida. Lara fell asleep at the wheel, and the vehicle went off the road, resulting in severe *338 injuries to Griffin. He sued Kia, claiming that the design of the reclining seat in which he sat and its restraining seatbelt were defective, causing the enhancement of the injuries he suffered in an otherwise minor accident; accordingly, he contended the vehicle was not crashworthy, and that Kia had failed to provide an adequate warning of the danger.
Griffin recounted that he was sleeping in the passenger seat in a 45-degree reclining position with his seatbelt fastened. He awoke as the car was leaving the highway and attempted to grab the wheel with his right hand, but did not actually touch it. The automobile's right front glanced off a cherry tree beside the road and came to rest against an oak tree, with an impact so minor that the airbags neither inflated, nor was Lara injured. Griffin, however, was not so fortunate. Because his seat was reclined, he was propelled forward so that his neck struck the seatbelt as though it were a clothesline, fracturing his neck at the C-5 level and rendering him quadriplegic. An expert testified that the seatbelt acted as a fulcrum when Griffin's neck hit it, and that the belt can only protect an occupant when it is snugly fit against a person's body. Another expert testified that an "interlock" device could have been installed which would have prevented the seat from reclining while the vehicle was in motion. The EMTs and highway patrol officer who arrived at the scene all testified that they believed it was a minor accident in which the car left the highway and struck glancing blows against the two trees. Photographs showed that the car was not badly damaged. In fact, there was no visible damage to the car's right headlight, turn signal, running light, fog light or bumper.
Kia's version of the accident was substantially different from Griffin's. Its theory was that Griffin's injuries were not caused by the reclined seat and restraining belt, but by a rollover. It contended that upon awakening, Griffin grabbed the wheel and that he and Lara wrestled for control, causing the vehicle to careen off the road. Kia's experts opined there had been a double rollover and that the car came to rest against the trees, and that Griffin's injuries occurred when his head smashed into the interior roof of the car. Kia's biomechanical expert stated that because Griffin reached for the steering wheel with his right hand, he was essentially upright and in contact with the seatbelt during the accident, thereby preventing any "clotheslining" effect.
The court directed the jury to determine whether the Sephia's reclining seatback design was defective and whether such defect was a legal cause of Griffin's injury, and, if so, to determine the comparative fault, if any, of Jahaira Lara and Peter Griffin. The jury found no defect in the seatback design, and the court entered judgment in favor of Kia.
Because this was a crashworthiness or enhanced-injury action filed against the automobile manufacturer, the trial court erred in allowing the issue of comparative fault to be tried. See D'Amario v. Ford Motor Co., 806 So.2d 424 (Fla.2001). In such cases, it is always presumed that the negligence of others caused the basic vehicular collision. What the appellant is contending is that a design defect in the vehicle exacerbated the plaintiff's injuries beyond what they would have been without such defect. He alleged that he would have sustained only minor injuries or none at all from the collision with the cherry tree were it not for Kia's defective design of the seatback, or Kia's failure to warn passengers of such hazard, because his catastrophic injuries were caused when his neck snapped forward from his reclined position into the rigid shoulder *339 belt. In D'Amario the supreme court observed that evidence of the fault of the driver or others who caused the initial accident "tends to unduly confuse the jury by focusing attention on the conduct giving rise to the accident instead of the issues of the existence of a defect and its role in causing the enhanced injuries." Id. at 440.
On remand, Kia will be permitted to present evidence showing that the accident did not implicate the crashworthiness of the Kia Sephia's seatback design, because a rollover rather than a frontal collision was the proximate cause of Griffin's injuries. Although its causation defense may involve evidence of Lara's falling asleep and Kia's theory of Griffin grabbing the wheel, the lower court cannot instruct the jury to decide whether Griffin and/or Lara were comparatively negligent. If the jury finds for Kia on such issue, the case will be concluded. If the jury rejects Kia's version of events and instead accepts Griffin's crashworthiness theory of proximate cause, the jury may next be asked to decide whether any negligence on Griffin's or Lara's part, combined with the Kia's defective condition, caused his enhanced injuries, if the court considers this to be a valid issue. See id. at 426 n. 2.
The court also committed reversible error by declining plaintiff's request for a jury instruction on his cause of action for strict liability failure to warn. Although a cause of action for negligent failure to warn is well-established,[2] only the Fourth District in Ferayorni v. Hyundai Motor Co., 711 So.2d 1167 (Fla. 4th DCA 1998), has expressly approved the existence of a cause of action alleging strict liability failure to warn. The Florida Standard Civil Jury Instructions do not include an instruction on strict liability for failure to warn, but the drafting committee noted that it was waiting for the courts to determine whether it is a viable cause of action. Fla. Std. Jury Instr. (Civ.), PL comment 2.
In Ferayorni, a teenaged driver was fatally injured following a collision in which she was wearing her shoulder belt under her arm, rather than over her shoulder, and her estate sued Hyundai Motor Co., alleging defective design of the belt, negligent failure to warn, and strict liability failure to warn, among other claims. The jury found no liability and judgment was entered for Hyundai. In reversing, the Fourth District concluded that the trial court had erred in refusing to give a jury instruction on strict liability failure to warn, and that the judge was wrong in concluding that the instruction on negligent failure to warn was sufficient. The Fourth District stated that this cause of action must encompass proof "`that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.'" Ferayorni, 711 So.2d at 1172 (quoting Anderson v. Owens-Coming Fiberglas Corp., 53 Cal.3d 987, 281 Cal.Rptr. 528, 810 P.2d 549, 558 (1991)). In the case at bar, Griffin based his requested jury instruction on the above-quoted statement from Ferayorni. We follow the Fourth District in recognizing this cause of action and direct the trial court on remand to instruct the jury on strict liability failure to warn.
Although we find no reversible error as to any of Griffin's remaining issues, because this case must be remanded for new trial, we consider it helpful to address certain of them. First, while we affirm Griffin's asserted error caused by the lower *340 court's refusal to submit a verdict form to the jury, we do so only because appellant failed to preserve the error below. We note that the language in the requested form generally tracks that in Griffin's requested instruction relating to strict liability failure to warn. Thus, if on remand the request is properly before the trial court, the refusal to submit such form to the jury could constitute error. Second, during the charge conference, Griffin's counsel stated that he usually preferred the jury to have a copy of the jury's written instructions with them during deliberations, but the court replied that it was not its custom to permit such practice in civil cases. We draw the trial court's attention to Florida Rule of Civil Procedure 1.470(b), which encourages trial courts to furnish written instructions to the jury "when practicable." Third, Griffin states that the judge refused his request to allow the jury to take notes. Such act would have been contrary to section 40.50(2), Florida Statutes (2000), which provides: "In any civil action which the court determines is likely to exceed 5 days, the court shall instruct that the jurors may take notes regarding the evidence and keep the notes to refresh their memories and to use during recesses and deliberations."
REVERSED and REMANDED for new trial.
BROWNING, J., CONCURS; BOOTH, J., CONCURS in part and DISSENTS in part.
BOOTH, J., Concurring in Part and Dissenting in Part.
I agree to the reversal in this case due to the instruction on comparative negligence. In all other respects I dissent from this opinion.
NOTES
[1] See Physician's Healthcare Plans, Inc. v. Pfeifler, No. SC01-2062 (Fla. Sept. 17, 2001); Kahn v. Pfeifler, No. SC01-2079 (Fla. Sept. 28, 2001); In re: Assignment of Senior Judges, No. SC02-593 (Fla. Mar. 19, 2002).
[2] See, e.g., High v. Westinghouse Elec. Corp., 610 So.2d 1259 (Fla.1992); Rodriguez v. New Holland N. Am., Inc., 767 So.2d 543 (Fla. 3d DCA 2000).