647 So.2d 1033 (1994)
Patricia BROWN, As Personal Representative of the Estate of Daniel Brown, deceased, Appellant/Cross-Appellee,
v.
GLADE AND GROVE SUPPLY, INC., Earl Stewart and Glades Equipment Co., Appellees/Cross-Appellants,
v.
MRS MANUFACTURING, Appellee.
Nos. 93-1089, 93-2672.
District Court of Appeal of Florida, Fourth District.
December 21, 1994.
Rehearing Denied January 26, 1995.
*1034 Claudia B. Greenberg, and John M. Abramson of Abramson & Magidson, Miami, for appellant/cross-appellee.
Kevin J. Carroll of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellee/cross-appellant  Glade & Grove Supply.
Roy W. Jordan, Jr. of Law Office of Roy W. Jordan, Jr., West Palm Beach, for appellees/cross-appellants  Glades Equipment and Earl Stewart.
Diane H. Tutt of Diane H. Tutt, P.A., Fort Lauderdale, and Mark W. Hektner of Behan & Hektner, Palm Beach Gardens, for appellee.
PARIENTE, Judge.
The issue before us is the propriety of granting final summary judgment in favor of all defendants in this products liability lawsuit involving a tractor. Because we find that issues of fact remain as to defective design and negligent failure to inspect, we reverse summary judgment in favor of the manufacturer, MRS Manufacturing Co., Inc. (MRS), and the seller, Glades Equipment Co., Inc. (Glades Equipment). We do, however, affirm summary judgment in favor of Glade and Grove Supply Company, Inc. (Glade and Grove), the successor corporation to Glades Equipment.

INTRODUCTION
On March 27, 1985, plaintiff's decedent, Daniel Brown, Jr., died as a result of injuries sustained when the tractor he was operating for his employer, U.S. Sugar Corporation (U.S. Sugar), rolled over. The tractor, manufactured by MRS had a separate steering system to control the rear wheels. When operating the tractor in the field, this rear steering system was desirable as it would enable the operator to make tighter turns and allow "crabbing," a four-wheel steering technique used in the field. On the road, however, operation of the tractor without a lock-out pin in place to prevent the inadvertent engagement of the rear wheel steering system and to stabilize the rear wheels would render the tractor unreasonably dangerous and prone to roll-over. One of the few undisputed facts in this case is that at the time of this accident a lock-out pin was not in place.
*1035 Following the accident, plaintiff filed suit against MRS, Glades Equipment, and Glade and Grove, under strict liability and negligence theories. Plaintiff's theory of defective design is two-pronged. First, plaintiff asserts defects in the design of the rear wheel steering system. Plaintiff's experts, by deposition and affidavit, specifically criticized the design of the lock-out pins, the overall design of the hydraulic steering system, which could cause rear wheel shifting at normal road speeds, and the placement of the lever for the rear wheel steering, which could cause inadvertent actuation of the rear wheels. Second, plaintiff asserts design defects in the warnings, including the failure to apprise the user of the dangers of driving the vehicle on the road without the proper lock-out of the rear wheel steering system.

STRICT LIABILITY
In granting summary judgment, the trial court found that strict liability and negligence theories did not apply, as a matter of law, because the manufacturer provided adequate warnings in the instruction manual concerning the dangers of using the tractor without the lock-out pin. To buttress its conclusion, it reasoned that because a tractor is not "inherently dangerous," strict liability is inapplicable.
Strict liability turns on the question of a defective design which renders a product unreasonably dangerous. Whether or not a product is "inherently dangerous" is not determinative of the applicability of strict liability. Radiation Technology, Inc. v. Ware Constr. Co., 445 So.2d 329 (Fla. 1983). "The phrase `inherently dangerous' is merely a descriptive factual conclusion, largely of historical interest, which has lost most of its utility with the evolution of products liability." Id. at 331. Indeed, the seminal case of West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), which adopted the doctrine of strict liability in Florida, involved a road grader, a product not unlike a tractor. A product may be in a defective condition due to a design defect, a manufacturing defect or defective warning. See Ford Motor Co. v. Hill, 404 So.2d 1049 (Fla. 1981); LeMaster v. Glock, Inc., 610 So.2d 1336 (Fla. 1st DCA 1992); Cassisi v. Maytag Co., 396 So.2d 1140, 1145 (Fla. 1st DCA 1981).
By focusing on the issue of warnings, the trial court disregarded the disputed factual issue of defective design of the rear steering system raised by plaintiff's engineering experts. Even if the warnings were adequate as a matter of law or unnecessary because of the obviousness of the danger, this would not remove from the jury the issue of defective design of the rear steering system.

WARNINGS
By granting summary judgment, the trial court also impermissibly removed the issue of defective warnings from the jury's consideration. Plaintiff's expert testified that failure to place the warnings on the tractor was "contrary to safe custom and practice." The mere existence of warnings in an instruction manual is not dispositive of the adequacy of the warnings for several reasons. A warning may be defective not only by virtue of inadequate wording, but as a result of its location and the manner in which the warning is conveyed. See Salozzo v. Wagner Spray Tech Corp., 578 So.2d 393 (Fla. 3d DCA 1991). For example, even if the language contained in the instruction manual adequately apprised a user of the dangers, a jury could find the warning defective because it was not permanently affixed to the tractor. See, e.g., Lopez v. Southern Coatings, Inc., 580 So.2d 864, 865 n. 2 (Fla. 3d DCA 1991) (manufacturer owes a duty to the user to warn of its producer's dangerous propensities and, therefore, that an employer or supervisor has been warned is of little import where the employee-user has not received the warning).
Had the instruction manual been kept with the tractor by the employer and thus available to plaintiff's decedent, which it was not, a question of fact still exists as to whether the "warning" language contained in the manual adequately apprises a user of the serious risk of injury or death resulting from nonuse of lock-out pins. The instruction manual provided by MRS gave no warning of *1036 the risk of roll-over. It contained, the following language:
CAUTION
DO NOT USE THE REAR WHEEL STEERING LEVER AT HIGH SPEEDS. WHEN TRAVELLING, INSTALL THE REAR STEERING LOCKOUT.
Advising a user to operate a tractor with the lock-out pins in place is an instruction, not a warning. A warning should contain some wording directed to the significant dangers arising from failure to use the product in the prescribed manner, such as the risk of serious injury or death. American Cyanamid v. Roy, 466 So.2d 1079, 1082 (Fla. 4th DCA 1984) ("The warning should be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger").
Further, the danger of roll-over from nonuse of a lock-out pin is not the type of "obvious" danger to which this court referred in Cohen v. General Motors Corp., Cadillac Div., 427 So.2d 389 (Fla. 4th DCA 1983) so as to lead to the conclusion that no warning was required. Rather, a manufacturer and supplier of a product who knows or has reason to know that the product is likely to be dangerous in normal use has a duty to warn those who may not fully appreciate the possibility of such danger.

CAUSATION
Defendants contend that summary judgment was appropriate as plaintiff offered little more than the mere speculation of her experts on the issue of whether the alleged defects in the tractor were the proximate or legal cause of the accident and that no one can say with any certainty why this accident occurred. Despite defendants' characterization of plaintiff's proof, we conclude that both of plaintiff's experts expressed opinions as to causation sufficient to allow a jury to decide this issue. The cases relied on by defendants are distinguishable. See Reaves v. Armstrong World Indus., Inc., 569 So.2d 1307 (Fla. 4th DCA 1990); Adkins v. Economy Eng'g Co., 495 So.2d 247 (Fla. 2d DCA 1986); Rhodes v. International Harvester Co., 131 Ariz. 418, 641 P.2d 906 (Ct.App. 1982). In Reaves, this court was reviewing the final judgment of the trial court and we are mindful of the stricter scrutiny that must be applied to a trial court's decision based upon the limited information available at a hearing on a motion for summary judgment, as opposed to that made after all evidence has been presented.
In Adkins, a products liability suit brought following a worker's fall from a platform, the second district affirmed summary judgment in favor of the defendants, the manufacturer and seller of the platform, on grounds that there was, "no competent evidence, direct or circumstantial, concerning the cause of the fall or where plaintiff was located or what he was doing when he fell." 495 So.2d at 248. In this case, defendants maintain that since plaintiff's decedent is unable to testify as to what occurred and there were no eyewitnesses who could otherwise explain the cause of the tractor roll-over, plaintiff has failed to offer sufficient evidence of legal cause. We disagree.
Establishing legal cause does not require direct testimony from the injured person or an eyewitness. If that were the case, legal cause could never be established where, as a result of an accident involving a defective product, the injured party was unable to testify and there were no eyewitnesses. Rather, legal cause may be established by circumstantial evidence, such as the testimony of accident reconstruction experts, which was offered in the instant case.
Plaintiff's experts testified as to the alleged design defects in the subject tractor, and stated that they believed these defects contributed significantly to cause the tractor roll-over and the death of plaintiff's decedent. Although one of plaintiff's experts conceded that he could not identify a specific defect which could be identified as the singular, legal cause of the accident, as a matter of law, we find the affidavit and deposition testimony of plaintiff's experts sufficient to raise issues of material fact with regard to the defective design of the tractor and the causal connection between the defects in design and warnings and the death of plaintiff's decedent.

*1037 LIABILITY OF GLADES EQUIPMENT

In addition to the manufacturer, Glades Equipment, as the seller of the tractor, may be held responsible for the defects under strict liability, as well as for its own negligent failure to inspect the subject tractor. Glades Equipment, and not Glade and Grove, was the seller and distributor of this tractor based on the uncontroverted evidence. Summary judgment was properly granted in favor of Glade and Grove, who did not sell or distribute this tractor, and improperly granted in favor of Glades Equipment.
Regarding inspection, if there was a duty to inspect the tractor at the time of delivery, Glades Equipment, not Glade and Grove, is charged with that duty. However, should the facts adduced at trial demonstrate conclusively that the manufacturer shipped the tractor directly to the purchaser with no opportunity for inspection by Glades Equipment, we see no basis for imposing an additional duty of inspection on the seller of the product. See Lawrence v. Brandell Prod., Inc., 619 So.2d 427 (Fla. 1st DCA 1993). Because, at this point, the facts are controverted as to whether the manufacturer expected its distributors to perform a pre-delivery inspection and whether an inspection should have been performed in this case, we decline to affirm summary judgment in favor of Glades Equipment on plaintiff's claim for negligent failure to inspect.

LIABILITY OF GLADE AND GROVE
Concerning the liability of Glade and Grove, it entered into an agreement to purchase the Glades Equipment dealership in 1978. The purchase of the dealership took place during the same time frame that the subject tractor was delivered to U.S. Sugar. We agree, however, that there is no basis to impose liability on Glade and Grove as a successor corporation under any of the exceptions set forth in Bernard v. Kee Manufacturing Co., 409 So.2d 1047 (Fla. 1982). In Bernard, the supreme court held that the liabilities of a selling predecessor will not be imposed upon the buying successor company, unless: (1) the successor expressly or impliedly assumes the responsibility of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor. 409 So.2d at 1049.
As stated in the contract for the sale of the dealership from Glades Equipment to Glade and Grove, this transaction was solely for the purchase of personal property, including inventory, "as [Glades Equipment] has on hand at the time of the closing of such sale and purchase." Therefore, the lower court, correctly applying Bernard, properly held that no theory of strict liability could be made applicable to Glade and Grove under the facts of this case.
As to plaintiff's separate claim for negligence against Glade and Grove, while Glade and Grove had assumed the distributor's responsibilities to service MRS products, including the subject tractor, plaintiff has failed to produce any evidence to suggest that Glade and Grove serviced or otherwise had contact with this tractor or that it had reason to know that the tractors were being operated without an available lock-out pin by employees of U.S. Sugar. Therefore, we see no basis in this case for imposing a post-delivery duty to inspect or warn.

CROSS-APPEAL
Because we have concluded that summary judgment in favor of MRS must be reversed on plaintiff's strict liability and negligence claims, summary judgment in favor of MRS on Glades Equipment's third-party claims for indemnity and contribution must also be reversed and remanded to the trial court.
AFFIRMED IN PART; REVERSED IN PART.
GLICKSTEIN and WARNER, JJ., concur.